STATE OF NORTH DAKOTA, Respondent, v. O. S. LESSLE-
YOUNG, Appellant.

(172 N. W. 814.)

**Indictment and information.**

1. Where one is prosecuted for a crime and a criminal information is filed in which the acts constituting a crime are alleged, it is incumbent upon the

state to prove, beyond a reasonable doubt, each and every material allegation of the information.

**Indictment and information — failure of proof.**

2. An information was filed against the defendant charging him with obtaining money and property under false pretenses. Evidence examined and *held* to show a failure of proof of material allegations contained in the information.

Opinion filed April 1, 1919.

Appeal from the District Court of Divide County, *K. E. Leighton,* J. Reversed.

*J. E. Burk* and *E. T. Burke,* for appellant.

*William Langer* and *Wm. G. Owens,* for respondent.

"The information may be amended." Comp. Laws 1913, § 10,633; State v. Wood, 24 N. D. 156.

"As to what constitutes false pretense." State ex rel. Spriggs v. Craig, 36 N. D. 162, and cases cited; State v. Merry, 20 N. D. 349, and cases cited; State v. Stewart, 9 N. D. 409, 6 L.R.A.(N.S.)366–370.

GRACE, J. Appeal from a judgment of the district court of Divide county, K. E. Leighton, Judge.

This is an action in which the defendant was, in the district court of Divide county, tried and convicted for obtaining money and property under false pretenses. A motion for a new trial was made and denied. Judgment was entered and an appeal duly perfected therefrom to this court. A long and involved information was filed, which was in what is termed two counts,—one of which charges the obtaining of money and property from one Arneson, and the other, money and property from one Gulson. The information was amended striking out the second count with reference to the obtaining of money and property under false pretenses from Gulson. To the information, as amended, the defendant interposed a demurrer which was overruled, and the defendant was tried by the court and jury upon the allegations of the amended information. A demurrer having been interposed to the information, it will be necessary to set the information out at length. Omitting formal parts, it is as follows:

42 N. D.—7.

"That heretofore, to wit: On the 17th day of August, in the year of our Lord one thousand nine hundred and fifteen, at the county of Williams, in said state of North Dakota, one O. S. Lessleyoung, late of said county of Williams and state of North Dakota, did commit the crime of obtaining money and property under false pretenses, committed as follows, to wit:

"Count one

"That at said time and place the said O. S. Lessleyoung then and there devising and intending by unlawful ways and means, and by false and fraudulent pretenses and representation to obtain and get into his custody and possession, money and notes of Halvor M. Arneson, with intent then and there had in him the said Lessleyoung to cheat and defraud, and thereby then and there to cheat and defraud the said Halvor H. Arneson of the same, did then and there wilfully, unlawfully, and feloniously, knowingly and designedly, falsely and fraudulently, pretend and represent to the said Halvor M. Arneson that the Consumers Service & Supply Company of Minneapolis was a co-operative organization of farmers and buyers throughout the Northwest, principally of the states of Minnesota, North and South Dakota, and Montana, organized for the purpose of mutual benefit and service for the purchase of farmers' supplies and the selling of farm products, with its principal office and headquarters in the city of Minneapolis, and that the stock of the said corporation and organization was of the worth and value of thirty dollars ($30) per share, and that the said defendant Lessleyoung was the duly authorized, recognized, and empowered officer, solicitor, and agent of the said Consumers Service & Supply Company, and that he had authority to sell the farmers of the Northwest and particularly to the said Halvor M. Arneson five shares of stock at the sum of $30 per share, for which the said Halvor M. Arneson was to pay to the said organization one hundred fifty-two dollars ($152), and that it was necessary, to become a member and to obtain such stock, for each and every subscriber and member, and particularly the said Arneson, to sign a proposed contract, which, when signed and accepted by the said represented organization, would permit all such subscribers, and particularly the said Arneson, to purchase goods, wares, merchandise, groceries, clothing, farm machinery, and farm supplies, and in fact any commodities or goods which the said Arneson

may desire, together with attorneys,' veterinary's, and doctor's services at greatly reduced and discounted charges, and as a part of such false and fraudulent pretenses and representations, the said Lessleyoung did then and there exhibit to and in the presence of the said Arneson, catalogues, pictures, printed matter, price lists, and statements, which the said Lessleyoung did then and there falsely and fraudulently offer and pretend the same to the said Arneson to be the authorized original and genuine catalogue and sale sheet of the said Consumers Service & Supply Company; and did further falsely and fraudulently state and represent and pretend to the said Arneson that all of the same and all of such statements were true and genuine and of the property and powers of the said co-operative organization and corporation of farmers, and that if the said Arneson purchase such stock he would become a member of such Consumers Service & Supply Company, and, by reason of such membership, participate in the sale and profits of the same, and be able to purchase and obtain all goods, wares, and supplies at a greatly reduced rate, and particularly of about 50 cents on the dollar of the cost if purchased from a local merchant in his community, whereas in truth and in fact the said O. S. Lessleyoung did not represent an organization or corporation or any business excepting a cousin, one S. P. Lessleyoung, and that there was no such an organization of farmers legally organized or existing under the laws of the state of Minnesota or North Dakota, and that the said O. S. Lessleyoung had no power, trust, or authority to sell stock in any such organization, and that such catalogues, price lists, pictures, and other printed matter so shown and exhibited in the presence of and to the said Arneson by the defendant Lessleyoung, were fictitious, old, and out of date catalogues of a fraudulent company theretofore existing and known as the Farmers General Service Company, which was a false and fictitious name used by one S. P. Lessleyoung and the defendant, O. S. Lessleyoung, for fraudulent purposes; and the said service contract was false and fraudulent and did not give to the said Arneson any particular discount or credits, and that he could not purchase goods from the said defendant or such organization cheaper than elsewhere, all of which the said O. S. Lessleyoung well knew, and the said Halvor M. Arneson then and there believing the said false and fraudulent pretenses and representations so made and as aforesaid, and being influenced by

such statements, catalogues, pictures, price lists, and statements of the said defendant, and believing all of the same to be true, and being deceived thereby, was induced by reason of the same and all of the same and such false and fraudulent pretenses and representations so made as aforesaid to deliver, and did then and there deliver, to the said O. S. Lessleyoung cash and promissory notes, which notes were executed by said Arneson in the sum of $150 and of the then and there value of $150, and of the foods, moneys, property, and credit of the said Arneson, and the said Lessleyoung then and there by means of the said false and fraudulent representations as made as aforesaid, did then and there wilfully, unlawfully, and feloniously, knowingly, designedly, and fraudulently, receive and obtain from the said Halvor M. Arneson the said promissory notes hereinbefore described and herein set forth, with intent then and there had in him the said O. S. Lessleyoung to cheat and defraud the said Arneson of the same, and the said Lessleyoung did then and there wilfully, unlawfully, and fraudulently take and carry the same away.

"Whereas, in truth and in fact the said pretenses, pictures, and representations so made and presented to the said Arneson as aforesaid was and were then and there in all respects utterly false, untrue and fraudulent, and whereas in truth and in fact the said defendant Lessleyoung well knew the said pretenses, pictures, and representations so made by him as aforesaid to be utterly false and untrue and fraudulent at the time of making the same, and the said defendant Lessleyoung then and there in the manner and by the means aforesaid did then and there wilfully, unlawfully, and feloniously, fraudulently, knowingly, and designedly cheat and defraud the said Arneson of the said money and notes hereinbefore described and set forth, all to the great damage of the said Halvor M. Arneson."

Assuming that the information charged public offense of which there is considerable doubt, we will pass to the consideration of one of the principal assignments of error, that is, that the court erred in not advising a verdict of acquittal. Under this head may be considered all the other errors assigned by the defendant. It is an elementary principle of criminal law that where one is accused of crime and an information is filed in court to which the defendant pleads not guilty, and the case proceeds to trial to a court and jury in the ordinary and reg-

ular manner, it is incumbent upon the state to prove beyond a reasonable doubt, the truth of each and every material allegation of the information. In the case at bar, the information alleges in substance that defendant made certain representations to one Arneson; that such representations were false and fraudulent and made with the intent to deceive the said Arneson; that defendant by means of such false pretenses, while Arneson relied thereon, obtained certain money and property from him. The information contains many other material allegations to the same effect, all of which will appear from the information itself. Conceding that the evidence shows the defendant made certain representations to Arneson, there is no competent evidence in the record to prove the very essence of the offense charged; that is, that such representations were false, fraudulent, and made with intent to deceive and defraud Arneson. There was a complete failure of proof in this respect. It would be a useless waste of time and serve only to make this opinion of great length to include herein a large share of the evidence for the purpose of demonstrating proof of what we have said with reference to the failure of proof of the material allegations of the information. There being no competent proof of the material allegations of the information in the respect above stated, it must follow that the court should have advised a verdict of acquittal. It did not do so and in this it was in error. It is clear there is no competent evidence to support and prove the material allegations of the information.

The judgment appealed from is reversed and the defendant's bail is exonerated.

CHRISTIANSON, Ch. J. (concurring specially). The false pretenses involved in this case are certain oral statements, which it is claimed the defendant made to one Arneson; and by means of which, it is charged, he obtained from Arneson certain notes. Arneson testified that the statements were made, and that in reliance thereon he executed and delivered certain notes to the defendant. But Arneson's testimony is not corroborated in any manner whatsoever. Hence, the state has failed to establish its case by the degree of proof required by § 10,842, Compiled Laws 1913, which provides: "Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense,

obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, *unless the pretense, or some note or memorandum thereof, is in writing, either subscribed by, or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances.* . . ."

In view of the rule announced in this statute the verdict in this case is clearly against the evidence.